**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **PAIGE EILEEN BAGGETT,** | § | |
| | § | |
| **v.** | § | **A-06-CA-572 LY** |
| | § | |
| **BURNET CONSOLIDATED SCHOOL** | § | |
| **DISTRICT, ET AL.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Burnet Consolidated Independent School District's Motion for Summary Judgment and Brief in Support (Clerk's  Doc. No. 73).

**BACKGROUND**

On a late September evening in 2003, Plaintiff Paige Baggett, then a 16-year-old Burnet High School (BHS) student, and her cousin, Veronica Matlock, were returning home from a night out. The girls, with Matlock as the driver, pulled alongside Foy Campbell's truck – at the time they did not know who he was – and Baggett "flashed" Campbell.[1]  Campbell, a 30-year-old teacher and coach at BHS, apparently motioned for the girls to pull over and they did.  On that deserted stretch of road, the three of them talked or a while and then the trio decided to get into Campbell's truck – Baggett felt pressure to do so – with Matlock driving.

---

[1]The extent of the "flash" is in dispute.  Because this is a motion for summary judgment, where the Court must view all inferences from the record in the light most favorable to the non-movant, the Court will accept Baggett's rendition of the "flash," which is that it was extremely quick, and only exposed the bottom portion of her bra.

What happened next is the source of some contention[2], but each side's version of events agrees that Baggett performed fellatio on Campbell while Matlock drove. Baggett contends that she was sexually assaulted; *i.e.*, that Campbell kissed her, pulled out his penis, and then forced her head down. Matlock's statement contends that it was a consensual act.[3]  Regardless, at this summary judgment stage of the case, the Court will accept Baggett's versions of events as true. Eventually, the parties returned to their respective trucks and went home. .

On November 19 (or 20, conflicting dates are given) 2003, Baggett's aunt, apparently having heard about the incident from her daughter (Matlock), told Rick Prewitt's wife about what she had heard and Prewitt's wife then told Prewitt, who is an assistant principal Burnet High School. Prewitt also spoke directly with Baggett's aunt, Terry Matlock, who contends that Prewitt told her that the incident should "be kept quiet" given that the BHS football team was in the playoffs and could not

---

[2]The parties each object to much of the other's summary judgment evidence. A great deal of the very voluminous evidence submitted by the parties is irrelevant to the legal issues presented by this motion. Therefore, rather than going through the tedious process of ruling on the objections to each and every piece of summary judgment evidence, the Court will address only objections if the evidence is necessary to its conclusions in this Report & Recommendation. In all other respects, the parties' objections to their opponent's summary judgment evidence are **OVERRULED.**

[3]Baggett includes an affidavit dated August 2, 2007, from Matlock that is essentially 180 degrees divergent from the handwritten statement she gave to BISD administrators near the time of the event. Matlock contends that she was pressured by the school administrators into giving a version of events that was damaging to Baggett. This turn of events is analogous to well-established case law that holds "a party may not create a fact issue by submitting an affidavit that contradicts, without explanation, the party's prior deposition testimony." *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482-83 (5th Cir. 2002); *see also John G. Mahler Co. v. Klein Karoo Landboukooperasie*, 58 F.3d 636 (5th Cir. 1995) ("a nonmovant cannot defeat a summary judgment motion by submitting an affidavit which contradicts, without explanation, the nonmovant's previous testimony in an attempt to manufacture a disputed material fact issue."). The Court stresses that, in any event, Matlock's affidavit repudiating her earlier contemporaneous statement *does not* create a fact question as to any of Baggett's claims (as will be developed below).

afford the negative publicity.  *See* Plaintiff's Response, Exh. 4.  Prewitt denies this, and states in his affidavit that he simply told Ms. Matlock not to gossip about it.  *See* Defendant's Motion, Exh. 4.

In the meantime, Prewitt relayed the accusation to BHS Principal Craig Spinn who in turn told BISD Superintendent Jeffrey Hanks.  Hanks then met with Campbell who denied even knowing Baggett.  Hanks then suspended Campbell with pay pending an investigation.  That same day, Hanks and a BHS counselor met with Baggett and her mother, Pamela Warden.  Baggett denied that the incident had occurred.  The administrators – Spinn, Prewitt, Hanks, and Middlebrooks – then met with Matlock to question her about the incident.  Matlock, who gave a written statement, told them that Baggett had flashed Campbell.  She also stated that she, Baggett and Campbell got into Campbell's truck after telling him they were eighteen and BHS graduates, and Baggett consensually performed oral sex on Campbell.  As noted earlier, Matlock now claims that this statement was coerced.

On the evening of the November 21, 2003, Baggett and her mother went to BHS to once again meet with four school administrators.  No school counselor attended.  During the meeting, Baggett, understandably upset at relating the events, became emotional and denied that she had consensually performed oral sex on Campbell.  Baggett claims that she was subjected to graphic questioning about the details of the assault (such as whether Campbell was circumcised).  The administrators concede that the questioning was detailed, but claim that because Campbell had denied the incident (and denied that he even know Baggett) they felt it necessary to ask detailed questions.  At that meeting Spinn told Warden that Child Protective Services would be contacted and Warden requested that BHS provide counseling for Baggett.

The Court need not go into the details of the aftermath – it will be taken up below – but, in short, Baggett contends that BISD failed to provide her counseling, and harassed her by requesting her arrest for truancy and assigning her to classes with Campbell's fiancee and prospective father-in-law (who both taught at BHS). Additionally, Campbell's prospective mother-in-law, also employed at BHS,[4] allegedly harassed and made disparaging comments about Baggett. Baggett also claims that embarrassment and harassment stemming from this incident caused her, upon turning eighteen, to drop out of high school.

In any event, Campbell pled guilty to injury to a child, and received 30 days probation and a $1,000 fine. Baggett brings claims against BISD for discrimination and retaliation under Title IX. She also brings § 1983 civil rights claims, a Texas Equal Rights Amendment claim, and various state law claims. Defendant BISD moves for summary judgment on all of these claims.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the nonmoving must set forth specific facts showing that there is a genuine issue for trial. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992).

---

[4] This is not an error. Campbell, his fiancee, and his prospective parents-in-law all worked at BHS during the relevant time period.

4

The Court begins its determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir.1992). It then reviews the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *See id.* If the nonmoving party sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994).

## ANALYSIS

### A.    State Tort Law Claims

BISD contends that it is entitled to summary judgment on Baggett's state law claims because the Texas legislature has granted school districts sovereign immunity over the types of torts alleged in Baggett's suit. Baggett does not respond to this argument. Generally, a governmental unit, as BISD is, enjoys sovereign immunity and cannot be named as a defendant in a cause of action except when it waives that immunity by consenting to suit. *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004 (5th Cir.1992). Texas law grants school districts immunity from tort claims except in suits involving the operation or use of motor vehicles. See TEX. CIV. PRAC. & REM. CODE ANN. § 101.051 (Vernon 2005). Specifically, a school district is liable only for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle." TEX. CIV. PRAC. & REM. CODE ANN. § 101 .021(1)(A)–(B) (Vernon 2005). To put it another way, school districts do not waive their immunity for torts such as those complained of here. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2005); *Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.—Corpus Christi 2002, no pet.).

Given this, Baggett's state law tort claims against BISD are precluded as a matter of law. Accordingly, Defendant BISD's Motion for Summary Judgment with regard to all of Baggett's state law tort claims should be granted.

## B.    § 1983 Claims

Baggett alleges a number of what she classifies as § 1983 claims: (1) Assault and Intentional Infliction of Emotional Distress; (2) Texas Tort Law; (3) Retaliation; (4) Deprivation of Education; (5) Equal Protection; and (6) State-created danger and deprivation of education.

42 U.S.C. § 1983 is the legal vehicle for individuals to vindicate their federal constitutional rights against persons acting under color of state law.  42 U.S.C. § 1983;  *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).  It is well settled that a school district is a "person" for § 1983 purposes.  *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978).  Municipal liability under 42 U.S.C. § 1983 requires proof of: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom.  *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).  "Municipalities can be held liable only when an injury was inflicted by a government's 'lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988) (citing *Monell v. New York City Dept. Of Soc. Servs.*, 436 U.S. 658, 690, (1978).  This prevents a municipality from being liable under § 1983 simply for employing a tortfeasor; that is, a municipality cannot be liable under a *respondeat superior* theory.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

An "official policy" is either a policy statement, ordinance, regulation, or rule that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees,

which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy. *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id*. The policymaker must have either actual or constructive knowledge of the alleged policy, due to its duration and frequency. *Id*.

Baggett seems to misapprehend the basic function of § 1983. It is the legal vehicle for individuals to vindicate their *federal constitutional* or *statutory* rights against persons acting under color of law. *Manax*, 842 F.2d at 812. Therefore, the first three incarnations of Baggett's § 1983 claims – Assault and Intentional Infliction of Emotional Distress; Texas Tort Law; and Retaliation – are mispled because they do not touch on a *federal* constitutional or statutory right (indeed, they are all tort-based claims). The first two are quite obviously not federal constitutional violations. While the Court is aware that there is a cognizable § 1983 retaliation claim, this variation comes in the form of a prisoner's rights claim or a First Amendment retaliation claim. *See, e.g.*, *Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) (stating elements of a First Amendment retaliation claim); *Cross v. Dretke*, No. 06-40513, 2007 WL 2110728, Slip op. at *1 (5th Cir. July 19, 2007) ("To state a valid claim for retaliation under § 1983 , a prisoner must (1) point to a specific constitutional right that has been violated; (2) produce direct evidence of a chronology of events pointing to the defendant's intent to retaliate against the prisoner for exercising a constitutional right; (3) show a retaliatory adverse act, and (4) show causation, i.e., that, but for the defendants' retaliatory motive,

the complained of incident(s) would not have occurred."). Baggett is not a prisoner nor is she complaining of retaliation because she engaged in protected expression.

Her § 1983 "deprivation of education" claim is also fatally flawed. As an initial matter, Baggett points to no (and the Court can find no) legal authority that this is a cognizable claim, under § 1983 or otherwise. BISD points the Court to an Eastern District case characterizing a deprivation of education claim as "mysterious[ ] . . . because [Plaintiffs] do not point to any statutory basis or common law doctrine as their source." *Doe v. S&S Consolidated Indep. School Dist.*, 149 F. Supp. 274, 303 (E.D. Tex. 2001). In addition to not being a proper § 1983 claim, it appears that Baggett's deprivation of education claim is simply not a recognized cause of action. This leaves two remaining § 1983 claims, which are discussed in the following sections.

### 1.      Equal Protection Claim

Baggett is in the constitutional claim arena with her equal protection claim. Her statement of her claim is less than plain. For example, in her response to the summary judgment motion, Baggett contends that:

> [BISD] contributed to the hostile environment that led to denial of Plaintiff's equal rights to an education and equal protection under the law. Her equal protection rights encompass unfair discrimination claims. The affidavits and Plaintiff's petition show an environment in which Plaintiff was made to pay for bringing the accusations against Campbell, although he was the perpetrator of the offense.

Plaintiff's Response (Clerk's Doc. No. 79) at 7-8. Baggett's Third Amended Complaint more helpfully claims that BISD discriminated against her based on her gender because it did not "remedy [the] known sexual abuse of its female students," and that BISD does not "provide female students with the same treatment and benefits as that provided to male students." *See* Plaintiff's Third Amended Complaint (Clerk's Doc. No. 70) at 22.

8

The equal protection clause requires that all persons similarly situated be treated alike. *See City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1989). In order to establish a violation of one's equal protection rights, a plaintiff must show "'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997) (*quoting McCleskey v. Kemp*, 481 U.S. 279, 292-93). In this case, to do this the plaintiff must demonstrate that, because of her status as a female, BISD treated her differently that males who had complained of a sexual act with a faculty member, Baggett's evidence, however, fails to demonstrate that male BHS students received better treatment by BISD when they had problems with a faculty member.

For example, Baggett's contention that BISD handled putatively sexually suggestive language a female teacher used in her classroom in a differential manner due to the "victim" being male is flawed, as it mischaracterizes the evidence. The document relied upon is a memorandum from a school administrator to a teacher. *See* Plaintiff's Response (Clerk's Doc. No. 79), Exh. 32. In the memo, the administrator relates several complaints made by parents related to comments that may have been interpreted as having a sexual connotation. There is no mention in the letter of any "victims," male or female. Further, the situation involved statements by a teacher to the entire class, and did not involve an alleged sexual relationship between a student and a teacher. In short, in this situation there is no identifiable victim, and even if there were, the victim is not similarly situated to the plaintiff.[5]

---

[5]Baggett also points to an undated "email" (there is no indication that it is indeed an email) that discusses "an alleged incident in our district" by a woman named Shirley Burnett from Burnet Elementary. *See* Plaintiff's Response, Exh 32. Baggett makes no effort to credibly connect this document to the facts of this case, therefore the Court will disregard it. Further, it is plainly hearsay, and Baggett offers no argument to demonstrate that it falls within any exception.

To support her equal protection claim, Baggett also relies on the way BHS handled an incident in 2006 when a female student teacher was immediately dismissed (and the police called) when her alleged relationship with a male student came to light.  *See* Plaintiff's Response, Exh. 33. This incident – which happened three months after this suit was filed – does not, however, help Baggett prove up her equal protection claim.  In this chronologically later incident, Spinn heard from a full-time teacher that a female student teacher was having a sexual relationship with a male BHS student.  Spinn called the Burnet Police Department and the student teacher was immediately dismissed. Baggett contends that the two crucial differences between this and the incident she was involved in are: (1) the teacher was immediately dismissed (even though she – like Campbell – denied the incident); and (2) Spinn called law enforcement as soon as he found out about the incident.

There is a strong parallel here with the policy behind the doctrine of subsequent remedial measures codified in the Federal Rules of Evidence.[6]  Rule 407 holds that a party should not be punished, after injury or harm is alleged, by having the evidence admissible in court that it took subsequent actions to repair or correct the source of the alleged harm.  *See* FEDERAL RULES OF EVIDENCE 407.  The commentary to the rule makes it plain that the "ground for exclusion rests on

---

[6] Insofar as BISD objects to the use of the police report as summary judgment evidence, that objection is **OVERRULED**.  In a civil case, a police report falls within an exception to the hearsay rule, *see* FEDERAL RULE OF EVIDENCE 803(8), and "[a]s a general rule, a statement appearing in a police report relating to responsibility for an accident or injury 'would properly be admitted in evidence if (1) it constituted a statement of fact, as distinguished from an opinion or conclusion, and (2) it represented the personal observations of the reporter, not a relaying of what someone else had told him.' " *Phillips v. Northwest Airlines Corp.*, 88 Fed. App'x 862 (6th Cir. 2004) (citation omitted); *see also Duhon v. Marceaux*, 33 Fed. App'x 703 (5th Cir. 2002) (distinguishing between admissible findings of fact and inadmissible evaluative conclusions or opinions in official reports). The officer's report here satisfies both requirements delineated above and therefore comes under Rule 803(8)'s exception to the hearsay exclusion.

a social policy of encouraging people to take . . . steps in furtherance of added safety." ADVISORY COMMITTEE'S NOTE Rule 407. In other words, Courts should not admit evidence of subsequent remedial measures in order to prove up the party's culpability. *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 429 (5th Cir. 2006).

Here, it is crucial that the student teacher incident happened *after* Baggett had filed her suit, thus placing BISD on notice that they were being sued, at least in part, for their handling of a sexual relationship between a faculty member and student. It appears that Baggett is correct that the BISD handled the matter differently – perhaps more swiftly, perhaps more professionally – than they did with her.[7] However – and it is worth noting that this is the *only* similarly situated person Baggett can point to – to punish the school district for improving its response to just such situations after it had been sued for its previous alleged wrongdoing would be akin to asking BISD to cut off its nose to spite its face. Or, more "high culturally," it would be forcing BISD to navigate between the Scylla of facing another lawsuit or the Charybdis of helping an already existing plaintiff prove up a claim in her existing lawsuit. The law does not, nor should it, favor such a result.

In any event, it is beyond debate that Baggett, by merely juxtaposing the two incidents, has not created a fact issue as to whether BISD was motivated by "'the existence of purposeful discrimination' . . . which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997) (*quoting McCleskey v. Kemp*, 481 U.S. 279, 292-93). There are a number of reasons having nothing to do with Baggett's gender – the most obvious of which is that BISD was learning from its mistakes with regard to Baggett's case – why BISD treated the two cases

_____

[7]Although abstracting the matter out, there can be no debate that even in Baggett's case: (1) the appropriate authorities were contacted (and Campbell was criminally prosecuted); and (2) Campbell was eventually let go by BISD.

differently.  In other words, Baggett presents no competent summary judgment evidence that the BISD administrators were *motivated* by discriminatory intent.  Therefore, the Court recommends that BISD's motion for summary judgment be granted as to Baggett's equal protection claim.

### 2.        State Created Danger Claim

Finally, Baggett claims her constitutional rights were violated based on a state-created danger theory.  She claims that BISD placed her, with deliberate indifference, in danger because it knew that Campbell had a history of engaging in inappropriate sexual misconduct with underage females yet hired him anyway.  In *Breen v. Texas A&M University*, the Fifth Circuit officially recognized the state-created danger cause of action that it had only *de facto* recognized earlier.  485 F.3d 325, 332-35 (5th Cir. 2007) (noting that state created danger is a specific type of substantive due process claim).  In order to prove a state-created danger claim, "the plaintiff must show that the harm to the plaintiff resulted because (1) the defendant's actions created or increased the danger to the plaintiff; and (2) the defendant acted with deliberate indifference toward the plaintiff."  *Id*. (citations omitted).  Additionally, "the state-created danger theory requires an identifiable victim."  *Id*.

Baggett spends much of her time delving into whether certain BISD administrators knew of a past inappropriate relationship Campbell was apparently involved in with a student when he was employed at the neighboring school district in Lampasas.  Baggett's summary judgment evidence consists of an affidavit that states that Spinn  was told in the "Fall of 2003" that Campbell had been involved with one or more female students at his previous job.  *See* Plaintiff's Response, Duhon Affidavit Exh. 19.[8]  Baggett argues that BISD "should have known" that Campbell would have

---

[8]There is also an affidavit from Baggett's mother that states that Spinn told her in November 2003 that he was checking out rumors regarding Campbell's previous behavior.  *See* Plaintiff's Response, Warden Affidavit, Exh. 10.

sexually assaulted its students had he been hired because "everyone knew about [Campbell's past problems at Lampasas]."  *See* Plaintiff's Statement of Genuine Issues of Material Fact (attached to Clerk's Doc. No. 79) at 11.[9]  This is so, Baggett, argues, because (1) the former athletic director  of the Lampasas district, Mark Kehoe, asserts that because of the proximity of the two school districts the Burnet school community would have heard rumors; (2) Baggett's mother was asked by Spinn – months after the incident – if she was involved in a conspiracy with Campbell's ex-wife to besmirch his reputation and Spinn cryptically told her "that these things sometimes get swept under the rug" (in response to her question of why Campbell was hired in the first place); and (3) that a former teacher at BHS knew of "rumors" about a coach's affair with a student at Lampasas.

But even if this amounted to a creation of a genuine issue of material fact, it all largely amounts to spilled ink.  What Baggett misses is that the danger she complains about – Campbell coercing her into performing oral sex on him, or, more generally, a sexual predation problem with underage girls – happened on a highway, late at night, after *Baggett* "flashed" *him*.  *See* Plaintiff's Statement of Genuine Issues of Material Fact at 6.  Indeed, Baggett testified that she did not even know Campbell was a BHS employee until after the incident.[10]  *See* Defendant BISD's Motion, Exh. 7 at 72-73.  Baggett's contention that Campbell was returning from a school volleyball game is a vain attempt to somehow connect BISD to the incident.  That is to say, BISD's knowledge of

---

[9]At one point Baggett makes the "should have known" argument, at another she appears to concede that actual knowledge is required.  In the interest of covering all the bases, the Court notes that actual knowledge is required to prove a state-created danger claim.  *See Morin*, 309 F.3d at 322.

[10]To the extent Baggett's affidavit attempts to controvert this point, the Court rejects it. *Copeland v. Wasserstein, Perella & Co* ., 278 F.3d 472, 482-83 (5th Cir. 2002) ("a party may not create a fact issue by submitting an affidavit that contradicts, without explanation, the party's prior deposition testimony.").

Campbell's prior problems in Lampasas, if any, is completely irrelevant to the issues here, as the contact between Campbell and Baggett did not arise out of a student/teacher (or any other campus-created) relationship. By hiring Campbell, BISD did nothing to influence, increase, or create the danger Campbell posed to Baggett that night, on a public street, away from the school. *Breen*, 485 F.3d at 334.

As a point of comparison, in *Breen v. Texas A&M University*, the well-known and tragic story of the Aggie bonfire collapse was at issue. There, "University Officials increased the danger to the victims by affirmatively delegating technical and complex Bonfire responsibilities to unqualified students without adequate supervision or guidelines." *Id*. at 337. Answering the question of whether there was a fact question as to the university's deliberate indifference, the Court said:

> Whether deliberately delegating the construction of the bonfire stack to students the University Officials allegedly knew were not qualified to handle such a dangerous project, and whether deliberately providing no supervision to students building the bonfire even though they knew the students were not qualified to build the stack, constituted deliberate indifference presents fundamental questions of material fact.

*Id.*

The facts of *Morin v. Moore* also offer a useful juxtaposition. There a police officer's drug-addled, psychologically unstable, neo-nazi son, using an AK-47 that his father had wrongfully come into possession of through the police department (and with the permission of the chief of police), shot three people (one of whom was dating his ex-girlfriend) after removing the gun from a cabinet where his father had stored the assault rifle. 309 F.3d 316 (5th Cir. 2002). The police officer father was fully aware of his son's problems. *Id*. at 324. The Fifth Circuit, in the context of a motion to dismiss, found that even if the state created danger theory was viable – this was pre-*Breen* – the

14

plaintiffs' "allegations do not demonstrate that Officer Moore used his authority to create an opportunity that would not otherwise have existed." *Id.* at 324 (citations omitted).

Under our facts, Baggett cannot show, as a matter of law, that BISD deliberately placed her in such proximity to Campbell that she would be sexually assaulted by him. In *Morin*, where the police officer knew of his son's severe problems and placed an assault weapon in their home, the Court refused to find the defendant had used his authority as a police officer "to create an opportunity that would not have otherwise have existed." *Morin*, 309 F.3d at 324. Even more damning to Baggett's state created danger claim is the *Morin* Court's approving citation to *Piotrowski v City of Houston*, where the Fifth Circuit refused to countenance a state created danger claim where "members of the Houston Police Department *had actually shielded and protected* the plaintiff's wealthy boyfriend as he plotted to kill her." *Id.* (citing to *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001) (emphasis added). Instead, the Court found that the City did not create the danger, but merely left her in an already dangerous position. *Id.* A state created danger claim is an extraordinarily hard claim to prove. The lesson from *Breen*, *Morin*, and *Piotrowski* is clear: there must a very close nexus between the governmental entity's act and the danger. Here, the facts simply do not come close to bearing this heavy evidentiary burden. The events took place at night, on a public road, in no relation whatsoever to a school event. The parties apparently did not recognize each other as student or coach, respectively. And BISD had nothing to do with Plaintiff's presence on the public roadway, or in Campbell's truck.

**C.   Substantive Due Process**

It appears that Baggett, in her response, attempts to state a "plain vanilla" substantive due process claim. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (substantive due

process is violated only when the conduct can properly be characterized as arbitrary, or conscience

shocking, in a constitutional sense). However, her response is the first time either the Court or BISD

has seen any mention of this particular "bodily integrity" substantive due process claim (although,

as noted above, the state-created danger claim is a specific subset falling under the broader

substantive due process umbrella). Baggett has filed three complaints in this case, the most recent

being on May 22, 2007. In none of those pleadings did Baggett plead this "bodily integrity"

substantive due process claim. Most importantly, she did not plead a "bodily integrity" substantive

due process claim in her Third Amended Complaint, the live complaint at this point. Therefore,

there is no bodily integrity substantive due process claim pled, and the Court will not address that

issue. *See Stearman v. C.I.R.*, 436 F.3d 533, 537 (5th Cir. 2006).

**D.    Title IX**

On this claim, Baggett asserts she was: (1) sexually harassed and (2) retaliated against in

violation of Title IX.

### 1.    Sexual Assault and Harassment

Baggett contends that BISD's "complete failure to timely and adequately address and remedy

the sexual assault and harassment to which she was subjected" constitutes a violation of Title IX's

prohibition against sex discrimination. Title IX prohibits sex discrimination by recipients of federal

education funding. The statute provides that "[n]o person in the United States shall, on the basis of

sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that

(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to

harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution. *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007).  The Court looks to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX. *See, e.g., Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 651(1999).

Leaving aside the fact that Baggett neglects to include any summary judgment evidence proving up the first element of her Title IX claim, she has not put forth competent summary judgment evidence to meet her burden as to the third element of her claim: "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with a [student's] performance." *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001).

Apparently – although it is not clear given the abstruse and spare nature of Baggett's arguments concerning her sexual harassment claim[11] – Baggett is complaining about the following acts: (1) the graphic nature of the questioning by the four (male) BISD administrators during her interview; (2) her placement, in August 2004, in Campbell's fiancee's gym class; (3) her placement, also in August 2004, in Campbell's prospective father-in-law's class; (4) Denise Love (Campbell's prospective mother-in-law) staring her down in the hallway at BHS; and (5) the educational

---

[11]This seems as good a place as any to note that much of Baggett's summary judgment response consists of long, factually based riffs on the facts of the case under headings such as "Failure to Report" and "Hostile Environment."  Simply recounting the facts in a tendentious manner does not amount to a legal argument.

environment, which she contends was so hostile that it caused her increased absenteeism and lower grades, and eventually to drop out.

In applying the factors delineated above (in *Breeden*), the Supreme Court has stated that sporadic use of abusive language, gender related jokes, or occasional episodes of harassment do not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).   The issue is whether any of the above behavior Baggett complains of is such that "a reasonable person in plaintiff's circumstances would find the educational environment so severe, pervasive, and objectively offensive as to undermine plaintiff's educational experience and deny her equal access to an institution's resources and opportunities." *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Taking the events as a whole, Baggett has failed to show that "a reasonable person in plaintiff's circumstances would find the educational environment so severe, pervasive, and objectively offensive as to undermine plaintiff's educational experience and deny her equal access to an institution's resources and opportunities." *Id*.   As BISD points out, insofar as the first complaint is concerned, Baggett testified that she knew she could have ended the interview with the administrators at any point, but that she continued as she was "trying to be honest with them."  *See* BISD's Motion, Exh. 8 at 126.  As far as the scheduling issues go, even if Baggett's version of the facts regarding them is given the benefit of the doubt, it is difficult to see how she has met her evidentiary burden.  Baggett states that she went to the first physical education class, discovered Ms. Love was teaching, and went to the school office to get her schedule changed, which the school promptly did.  Second, insofar as Mr. Love's class is concerned, once Baggett received her schedule her mother called the school over the semester break and the schedule change was made without

18

Baggett ever having to attend his class.  It is also undisputed that Spinn sent Denise Love a letter

regarding a report that she was "staring down" Baggett, asking her to refrain from supervising the

hallway when Baggett would be in the area.  *See* Plaintiff's Response, Exh. 30.  As Baggett admits,

BHS has 900 students and the student's schedules are made by a computer program.  Finally, it is

undisputed that Baggett had absenteeism issues before the incident (having missed 62 class periods

in the 2002-03 school year), and was carrying a low-C average before the episode.  Indeed, arguing

school absenteeism and poor grade is not proof of a hostile environment, as these facts could as

easily flow from circumstances having nothing to do with Baggett being harassed.

Given the above, and focusing on the evidence of allegedly harassing actions by BISD, the

Court finds that Baggett has raised not a material fact question on this issue and, therefore, BISD

should be granted summary judgment on her sexual harassment claim under Title IX.

### 2.        Retaliation

Retaliation against a person because that person has complained of sex discrimination is a

form of intentional sex discrimination encompassed by Title IX's private cause of action.  *Jackson*

*v. Birmingham Board of Educ.*, 544 U.S. 167 (2005).  Retaliation is, by definition, an intentional act.

It is a form of " discrimination" because the complainant is being subjected to differential treatment.

*See generally Olmstead v. L. C.*, 527 U.S. 581, 614 (1999)**.**  Moreover, retaliation is discrimination

"on the basis of sex" because it is an intentional response to the nature of the complaint: an

allegation of sex discrimination.  *Jackson*, 544 U.S. at 173-74.  When a funding recipient retaliates

against a person because he complains of sex discrimination, this constitutes intentional

"discrimination" "on the basis of sex," in violation of Title IX.  *Id*.  Generally, courts have looked

to Title VII, 42 U.S.C. §§ 2000e, as an analog for the legal standards in both Title IX discrimination

and retaliation claims. *See Brown v. Hot, Sexy and Safer Prods., Inc.*, 68 F.3d 525, 540 (1st Cir.1995) ("Because the relevant caselaw under Title IX is relatively sparse, we apply Title VII caselaw by analogy.") (discrimination claim); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206-07 (4th Cir.1994) ("Title VII, and the judicial interpretation of it, provide a persuasive body of standards to which [the court] may look in shaping the contours of a private right of action under Title IX.") (retaliation claim); *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir.1993) (Title VII provides "the most appropriate analogue when defining Title IX's substantive standards.") (disparate impact claim).

Modifying the retaliation paradigm to fit the educational context, a plaintiff may establish a prima facie case for a Title IX retaliation claim by alleging facts sufficient to show that she engaged in activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action. *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 67 (1st Cir. 2002).

Baggett misunderstands the basic requirements of a retaliation claim. She must have *first* complained of sex discrimination – i.e., engaging in protected activity – and then have been retaliated against in order to bring a valid Title IX retaliation claim; she must have been acted against *because* of that initial complaint. *See Jackson*, 544 U.S. at 173-74. She did not do this, therefore, summary judgment is recommended as to this claim.

**E.    Texas Equal Rights Amendment Claim & Texas Civil Practice and Remedies Code**

BISD moves for summary judgment on Baggett's Equal Rights Amendment Claim and her Civil Practice and Remedies Code claim because she waived these claims by failing to respond to

20

BISD's arguments regarding these claims in her response to its motion.  Baggett indeed does not address either claim in her response.  Therefore, she has waived these claims.

### RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment *(*Clerk's Doc. No. 73).

### WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of September, 2007.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE