IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PAIGE EILEEN BAGGETT, | § | |
| | § | |
| v. | § | A-06-CA-572 LY |
| | § | |
| BURNET CONSOLIDATED SCHOOL | § | |
| DISTRICT, ET AL. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendant Ricky Love Campbell's Motion for Summary Judgment (Clerk's Doc. No. 96). On March 23, 2007, Judge Yeakel referred all dispositive motions to the Court for a Report and Recommendation.

**SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential

to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## BACKGROUND

The following recitation of the facts is propounded in the light most favorable to the non-movant.

At all relevant times, Ricki Love Campbell ("Love Campbell") was the fiancee of Foy Campbell, a coach and teacher at Burnet Independent School District ("BISD"), who Baggett claims sexually assaulted her in his pick-up truck while Baggett's cousin drove. For a full recounting of the facts not specifically germane to the resolution of this case, see this Court's Report and Recommendation on BISD's motion. (Clerk's Doc. No. 90). Love Campbell a gym teacher also employed by BISD at the time of incident. Baggett claims that Love Campbell and her mother, Denise Love (also employed by the school district) "were overheard discussing [Baggett] in the hallway of Burnet High School [where Baggett was a student], calling her a liar . . . ." *See* Plaintiff's Response at 4. Baggett was also deemed a "slut" by many in the school community, including faculty and staff. When the spring semester schedule came out, Baggett discovered that she had been placed in Love Campbell's gym class; fearing retaliation, she obtained a hall pass to get her schedule changed (which she was able to do). Baggett was confronted by Denise Love and asked why she was changing her schedule, with Love asking, "What, can't you handle it, slut?" *Id*. Love Campbell and Denise Love also "continued to actively campaign against [Baggett] in the community" by doing such things as threatening Baggett's mother's livelihood and "gossip[ing] about [Baggett and her mother] in a negative way." *Id*. at 4, 5. Baggett also states that Love Campbell took her out of a class and threatened to send her to a youth correctional facility. Finally, in addition to calling

Baggett a "slut" and a "liar" to "all those who would listen well into the Summer of 2005," Baggett contends that Love Campbell conspired with Foy Campbell to publicly display a love letter – including giving it to the district attorney prosecuting Foy Campbell – from Baggett to her then-fiancee. *Id*. at 5.

Baggett brings claims "against Ricki Love Campbell and others" under § 1983 for Retaliation, Assault and Intentional Infliction of Emotion Distress (IIED), Deprivation of Education, and Equal Protection. She also brings state law claims under the Texas Equal Rights Amendment, Civil Practice and Remedies Code, slander, intentional infliction of emotional distress, and invasion of privacy. Defendant Love Campbell moves for summary judgment on all of these claims.

**ANALYSIS**

**A.    What Claims Are at Issue in this Summary Judgment Motion?**

Love Campbell asserts that because Baggett's Response to her summary judgment motion states that Baggett is suing Love Campbell "in her individual capacity for slander and the subsequent intentional infliction of emotional distress" and it further contends that Love Campbell "lacks standing to move for summary judgment on [Baggett's] federal claims against [BISD], for whom she worked as an agent," *see* Plaintiff's Response at 7, that the only claims in play here are the state slander and IIED claims**.**

This is largely, but not completely, correct. Baggett's Response indicates that she is only pursuing certain claims against Love Campbell in her individual capacity, and that the rest of her claims are against Love Campbell in her official capacity.[1] The Supreme Court has emphasized that

---

[1] The only other interpretation of the agency language in Baggett's Response – that Baggett literally meant to plead an agency/principal argument – would render the federal law claims legally unintelligible. Moreover, an agency relationship is essentially what is claimed when suing a

official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 24 (1991); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). That is, any claims against public officials in their official capacity are treated as claims against the governmental entity involved. *Id.*; *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). Accordingly, a § 1983 suit naming defendants only in their "official capacity" does not involve personal liability to the individual defendant.

In *Romero v. Becken*, the Fifth Circuit affirmed a dismissal of Section 1983 claims against city officers in their official capacities because the plaintiff also asserted the same claims against the city. 256 F.3d 349, 355 (5th Cir.2001). The Court reasoned that the claims against the city officers in their official capacities duplicate the claims against the city because to hold both the city and its officers liable for the same claims would make the city liable twice for the same claims. *Romero*, 256 F.3d at 355. *Romero*'s reasoning applies to Baggett's official capacity claims against Love Campbell. In her response, Baggett makes it clear that she is suing Love Campbell on the federal claims in her official capacity only. *See* Plaintiff's Response at 7. The only claims that remain are Baggett's state law claims against Love Campbell under the Texas Equal Rights Amendment, Civil Practice and Remedies Code, slander, intentional infliction of emotional distress, and invasion of privacy.[2]

---

government official in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[2]Love Campbell contends that *all* Bagggett's claims save for the slander and IIED claims have been waived, based on her Response. She is correct that these are the only state law claims Baggett refers to in her response. Out of an abundance of caution, however, the Court will analyze all of Baggett's state law claims because it appears that she intended to name Love Campbell individually in all the claims listed in the text.

In other words, because Baggett is asserting the same Section 1983 claims against BISD that she asserts against Love Campbell, and because in her response Baggett admits that she is only suing Love Campbell in her official capacity for these claims, they are duplicative and the Court recommends that Defendant Love Campbell's Motion for Summary Judgment with regard to Baggett's federal law claims be GRANTED.

**B.     Slander**

Baggett contends that "the last known instance of Defendant Ricki Love Campbell's slanderous uttering against [Baggett] occurred in June 2005 . . . ." *See* Plaintiff's Response at 7. The statute of limitations for defamation claims of slander and libel is one year from the day after the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.002 (West 2002). A cause of action for libel or slander accrues on the date of communication. *Ellert v. Lutz*, 930 S.W.2d 152, 156 (Tex.App.– Dallas 1996, no writ); *Salazar v. Amigos Del Valle, Inc.*, 754 S.W.2d 410, 412 (Tex.App.– Corpus Christi 1988, no writ).

Baggett filed her lawsuit on July 25, 2006. Therefore, the resolution of this claim is straightforward. Even if the Court assumes that there is competent summary judgment evidence of slander and that it occurred at the latest possible date – June 2005 (according to Baggett's own calculations) – the claim falls outside the applicable statute of limitations. Therefore, it is recommended that Love Campbell's motion for summary judgment on this claim be GRANTED.

**C.     Invasion of Privacy**

Baggett next contends that when Love Campbell "published a [stolen] letter [from Baggett to her fiancee]" she caused Baggett "mental distress and destroyed her reputation in the community." *See* Plaintiff's Third Amended Complaint at 27. In a 1973 case, *Billings v. Atkinson*, the Texas

Supreme Court adopted an invasion of privacy tort based on the Restatement of the Law of Torts. 489 S.W.2d 858, 860 (Tex. 1973). However, the Second Restatement of Torts has refined this into four torts, three of which have been recognized (but only two explicitly) by the Texas Supreme Court. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994); *see also* DORSANEO, TEXAS LITIGATION GUIDE § 335.02 Tort of Invasion of Privacy.

Baggett does not distinguish which specific invasion of privacy tort she is pleading. However, the Court believes that Baggett meant to plead the "disclosure of private facts" sub-set of the invasion of privacy tort. *Id*. In order to recover damages for the disclosure of private facts, a person must prove that: (1) publicity was given to matters concerning his or her private life, (2) the matter publicized is not of legitimate public concern, and (3) the publication of those matters would be highly offensive to a reasonable person of ordinary sensibilities. *Industrial Foundation of the South v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 682-685 (Tex. 1976). The first element requires that the communication at issue be disseminated so that the matter becomes public knowledge. *Id*. at 683, 684.

There is no competent summary judgment evidence that the contents of the letters became well-known in the community. Baggett argues that Love Campbell conspired with Foy Campbell "by causing [Foy Campbell's criminal defense] attorney to present [the letter] . . . to become publicly displayed and specifically given to the District Attorney . . . ." *See* Plaintiff's Response at 5. Her evidentiary support is Baggett's mother's (Pamela Warden) affidavit. However, the only reference in that affidavit to the contents of the letter is Warden's statement that the assistant district attorney assigned to Foy Campbell's criminal case told her that Foy Campbell would be allowed to plead to a less serious charge given the contents of the letter. *Id*. at Exh Q. Therefore, Baggett's argument

7

fails on two related counts. First, the cited summary judgment evidence – Warden's affidavit – fails to even name Love Campbell in connection with the letter. Moreover, even if the Court were to grant that Baggett has succeeded in connecting Love Campbell with the letter there is no evidence, other than the conclusory assertion in the Response, that the private contents of the letter received the requisite level of publicity in order to satisfy the first element of the claim.

Baggett claims in her complaint that Foy Campbell's attorney "published" the contents of the letter to the other defendants sued here, a grand jury, and the Burnet County District Attorney's Office. In *Industrial Foundation*, the Court made a point to distinguish publication in the defamation context – one only need "publish" the information to one other person – from publicity in the invasion of privacy context. The Court held that: "[p]ublicity requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge." 540 S.W.2d at 684. Baggett points to deposition testimony that "[e]verybody" thought Baggett was "a slut," *see* Plaintiff's Response at Exh. H, but that testimony regarded the incident with Foy Campbell not the contents of the letter, as Baggett herself argues in her Response. *Id*. at 4. Perhaps most importantly, Baggett's own summary judgment evidence undermines her claim. Baggett includes a statement from Daniel Castillo, Baggett's fiancee at the time, that it was his ex-wife, Robin Castillo, who rummaged around in his bedroom and took the letter. *See* Plaintiff's Third Amended Complaint, Exh 58. It is never made clear how Love Campbell – beyond a vague conspiracy allegation – took part in invading Baggett's privacy.[3]

---

[3]Even if the Court read Baggett's argument to plead the "intrusion" sub-set of the invasion of privacy tort – the other version of the invasion of privacy tort that the Texas Supreme Court has recognized – she could still not avoid summary judgment on this claim. The Texas Supreme Court

Given all this, the Court RECOMMENDS that Love Campbell's Motion for Summary Judgment be GRANTED on the invasion of privacy claim.

**D.     Intentional Infliction of Emotion Distress**

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000). To be extreme and outrageous, a defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Mere insults, indignities, threats, annoyances, petty oppression, or other trivialities are not considered extreme and outrageous conduct. *Horton v. Montgomery Ward & Co., Inc.*, 827 S.W.2d 361, 369 (Tex. App. – San Antonio 1992, writ den.). Similarly, conduct is not considered extreme

---

has held that, "[o]ne who intentionally intrudes on the private affairs or solitude of another, in a manner that would be highly offensive to a reasonable person, is liable in tort to the other for the form of invasion of privacy known as intrusion. See *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). Intrusion may take the form of an investigation or examination into a person's private life, such as by opening personal mail, searching a private room, or examining his or her personal bank records. RESTATEMENT (SECOND) OF TORTS § 652B, Comment b. The same result obtains as above. Warden's affidavit is the summary judgment evidence Baggett relies on; however, there is no indication from that affidavit that Love Campbell took any steps to intentionally intrude on Baggett's private affairs by taking the letter. In fact, it is not clear how exactly the letter ended up in the hands of Foy Campbell's attorney. Baggett's Third Amended Complaint contains an unsworn statement that Robin Castillo, Baggett's fiancee's ex-wife, rifled through his (the fiancee's) belongings and found the letter(s). *See* Third Amended Complaint, Exh. 58. From this, Baggett contends that Love Campbell was involved in a conspiracy with Robin Castillo. However, Baggett points to no summary judgment evidence that makes this connection.

or outrageous simply because it is rude or tortious. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994) ; *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 741-742 (Tex. 2003) (employer's mismanagement of investigation into harassment claim and employee's subsequent termination were unpleasant, but not extreme and outrageous conduct); *Moore v. Waldrop*, 166 S.W.3d 380, 387 (Tex. App. – Waco 2005, no pet.) (summary judgment proper for defendant because alleged conduct in calling plaintiff "crook'" and attempting to undermine employment opportunities, while rude and inappropriate, was not sufficient to establish "extreme and outrageous" behavior).  This is true even as it applies to criminal conduct.  *See Washington v. Knight*, 887 S.W.2d 211, 216-217 (Tex. App. – Texarkana 1994, writ den.)   Maligning a person's reputation may constitute intentional infliction of emotional distress. *See Havens v. Tomball Community Hospital*, 793 S.W.2d 690, 692 (Tex. App.-Houston [1st Dist.] 1990, den.).

To support a cause of action for intentional infliction of emotional distress, the statements must be extreme and outrageous.  In *Diamond Shamrock Refining v. Mendez*, it was held that statements by an employer that allegedly falsely depicted a fired employee as a thief were not sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. 844 S.W.2d 198, 202 (Tex. 1992). In another, calling an employee a "dummy" and otherwise insulting her in the course of a work dispute was not considered outrageous. *Horton v. Montgomery Ward & Co., Inc.*, 827 S.W.2d 361, 366-369 (Tex. App. – San Antonio 1992, writ den.) . If the statement was not made with "actual malice," *i.e.*, with knowledge or reckless disregard of its falsity, making the statement will probably not be considered extreme and outrageous conduct. *See Beck v. Lone Star Broadcasting, Co.*, 970 S.W.2d 610, 619 (Tex. App. – Tyler 1998, pet. denied)] .

In this case, the problem with the IIED claim is a lack of competent evidence to support it. Almost all of Baggett's summary judgment evidence concerning her IIED claim against Love Campbell is incompetent because it is (1) irrelevant insofar as it concerns the acts and statements of other persons; or (2) hearsay, *see Barry v. Simmons Airlines, Inc.*, 239 F.3d 366 (5th Cir. 2000). The only statement that is admissible and from Love Campbell relates to Baggett's deposition testimony about Love Campbell's threats, as this can be construed as an admission of a party opponent. *See* FED. R. EVID. 801(d)(2) (laying out requisites for admission of party opponent's out-of-court statements).

For example, much of what Baggett complains of is what Denise Love said, not what Love Campbell did or said. *See, e.g.,* Plaintiff's Response at 4 (Denise Love calling Baggett a slut, Denise Love threatening Baggett through Baggett's aunt). When Love Campbell's conduct is implicated it is for such things as her being "overheard discussing" Baggett in the hallway at BHS and calling her a liar, although the only evidence Baggett cites to of this is a letter from the BHS principal asking Denise Love to refrain from "staring down" Baggett in the hallway (and does not mention Love Campbell at all). *See id.*, Exh. G. Other evidence submitted is equally off point. There is an affidavit from the BHS attendance clerk that talks of Denise Love's acts. *Id.* at Exh. K. Other evidence cited to again only speaks of Denise Love's acts, not Love Campbell's. *See id.* at Exh. L (Affidavit of Fannie Romero and statement of Melissa Ussey). When Love Campbell's acts and statements are implicated it is primarily hearsay. Baggett cites to Principal Spinn's deposition where he stated that he remembered being told by Warden (Baggett's mother) that Denise Love and Love Campbell were calling the hair salon where Warden worked and talking about the incident with Foy Campbell. This is, at best, triple hearsay – from Love Campbell to Warden to Spinn, the declarant

11

– and is inadmissible. *Barry*, 239 at 366 (excluding double hearsay statement even where one of the declarants was a party opponent). The same holds true for Warden's deposition testimony. *See* Plaintiff's Response at Exh. O (detailing hearsay statement from Love Campbell to owners of hair salon to Warden). Finally, the same can also be said of Warden's affidavit. *See id*. at Exh. Q (detailing conversation that was relayed to Warden from Love Campbell's neighbor, Kenna Bolan, that she (Bolan) had conversation with Love Campbell).

In other words, the only competent summary judgment evidence against Love Campbell insofar as the IIED claim is concerned is Love Campbell's threat to send Baggett to a youth correctional facility. This statement by itself is not sufficiently severe to be extreme and outrageous. *Natividad*, 875 at 699. Given the competent summary judgment evidence, or lack thereof, before the Court, the Court recommends that Love Campbell's motion for summary judgment on the IIED claim be GRANTED.

**E.      Texas Equal Rights Amendment Claim & Texas Civil Practice and Remedies Code**

Baggett also pled an Equal Rights Amendment Claim and a Civil Practice and Remedies Code claim in the Third Amended Complaint. The Texas state constitution provides that sex, race, color, creed, or national origin shall not deny or abridge equality under the law. *See* TEX. CONST. art. I, § 3a. The Texas Equal Rights Amendment requires that courts subject sex-based classifications to strict judicial scrutiny. *See In re McLean*, 725 S.W.2d 696, 698 (Tex.1987); *see also Messina v. State*, 904 S.W.2d 178, 180 (Tex. App – Dallas, 1995, no writ. h.). Under strict judicial scrutiny, the court first determines whether the law or act in question discriminates against one sex based solely on gender. *See Messina*, 904 S.W.2d at 180. Leaving aside the fact that Baggett does not address this claim in her response (other than to point out that she has pled it), the

salient fact remains that there is no evidence put forth by Baggett that shows how Love Campbell discriminated against her on the basis of her gender.

Baggett's Civil Practice and Remedies Code claim fails along these same lines. Chapter 106 of the Civil Practice and Remedies Code provides that:

> (a) An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin:
> . . .
> (4) refuse to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state;

TEX. CIV. PRAC. & REM. CODE ANN. § 106.001(a) (West 2005). Baggett points to no evidence – here again, the issue is not briefed – that Love Campbell refused to permit Baggett to participate in any program managed by BISD, or did so because of Baggett's gender.

Accordingly, Love Campbell's motion for summary judgment on both of these claims should be GRANTED.

## RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment (Clerk's Doc. No. 96).

## WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall

bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 7th day of January, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE